039620/01245/MHW/JFM

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NORMAN JOHNSON,<br><br>        Plaintiff,<br><br>v.<br><br>GHALIA OBAISI as the Independent Executor of the Estate of Saleh Obaisi, M.D. (deceased) and WEXFORD HEALTH SOURCES, INC.,<br><br>        Defendants. | Case Number 14-cv-10117<br><br>Judge Edmond E. Chang |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, GHALIA OBAISI as the Independent Executor of the Estate of Saleh Obaisi, M.D. and WEXFORD HEALTH SOURCES, INC., by and through their attorneys, Matthew H. Weller and James F. Maruna, of CASSIDAY SCHADE LLP, and for their Memorandum of Law in Support of Their Fed. R. Civ. P. 56 Motion for Summary Judgment, state as follows:

### INTRODUCTION

Plaintiff, NORMAN JOHNSON, a thirty-seven year old inmate serving a forty (40) year sentence for murder, has filed a Third Amended Complaint against WEXFORD HEALTH SOURCES, INC. and GHALIA OBAISI, as the Independent Executor of the Estate of Saleh Obaisi, M.D., related to *inter alia*, claims of medical deliberate indifference regarding treatment of his lipoma (a growth of fatty cells on his head) and a varicocele (swelling of a testicular vein).

Turning first to the varicocele, the undisputed evidence finds that this is a fairly common condition occurring in 7% of the adult male population and that it causes no harm. *See* Statement of Facts ("SOF"), ¶ 33. Indeed, while this particular Plaintiff has on occasion claimed

that his particular varicocele can cause a sharp pain in his testicle, Dr. David Guthman, a board-certified urologist, testified that in his thirty-one (31) years of practice, and seeing between 9,300 and 15,500 patients for varicocele, has never seen or heard of even one patient describe their varicocele-related discomfort as a "sharp pain," and such a report is simply not consistent with how varicocele pain presents in patients. (SOF at ¶ 72).

In any event, even if Plaintiff's case was the exception, and his varicocele was producing "sharp pain," the medical evidence confirms that the Plaintiff was sent out to UIC for this condition, and UIC urologist, Dr. Simone Crivellaro, saw the Plaintiff twice, and advised on both occasions that surgery was not indicated and that Dr. Obaisi should continue the conservative treatment measures that he was already-providing to the Plaintiff at Stateville. (SOF at ¶¶ 51-52). The only two urologists deposed in this case, Drs. Crivellaro and Guthman, supported Dr. Obaisi and Wexford's medical treatment and management of the Plaintiff's varicocele and opined that the Plaintiff did not require surgery. The layman Plaintiff disagrees, but an inmate's disagreement with his physicians cannot support a finding of deliberate indifference.

Turning second to the lipoma, the undisputed evidence finds that this Plaintiff's lipoma is small - a few centimeters in size, and medical imaging confirms that it is entirely contained within the fat layer of his skin, meaning that it cannot cause headaches or other pain complaints. (SOF at ¶ 76). Imaging and physical examination also confirm that it is non-cancerous. (SOF at ¶ 75). Dr. Dennis, a board-certified general surgeon, who has surgically-removed over 500 lipomas in his career, testified that there was no need to remove this lipoma surgically, and that the only reason to consider surgery for this inmate's lipoma was for cosmetic reasons. (SOF at ¶ 74). As with his varicocele (discussed above), an inmate's disagreement with elective medical treatment does not support a finding of deliberate indifference.

Ultimately, the Plaintiff cannot prevail on a claim of deliberate indifference for either of his two medical claims, as a matter of law. Accordingly, the Court should grant summary judgment in the Defendants' favor and dismiss this case, with prejudice.

## II.  MATERIAL FACTS

The Defendants incorporate their Statement of Undisputed Facts Pursuant to Local Rule 56.1 and accompanying exhibits, filed concurrently with their Motion for Summary Judgment and supporting Memorandum of Law.

## III.  THE COURT SHOULD STRIKE DR. MAYER'S UROLOGIC OPINIONS

Initially, the Court should strike any urologic opinions offered by Dr. Mayer, Plaintiff's retained medical expert. Dr. Mayer is a professional expert witness (having worked as an expert 700 times), and although he is a board-certified general surgeon, he is not a board-certified urologist. (SOF at ¶ 10). He also holds no current hospital appointments. (SOF at ¶ 10). Merely possessing a medical degree does not make a doctor an expert in all aspects of medicine. *See e.g., Olsen v. Delecore*, No. 07-CV-334, 2008 U.S. Dist. LEXIS 88962, * 2, (D. Utah Sept. 24, 2009). However, a medical expert witness brought in to testify as to a standard of care can testify to a standard in a different specialty than his own, but he must satisfy Fed. R. Evid. 702 and show that he is knowledgeable in that area. *Id.*

Typically, when this is allowed it is because two doctors treat the same area despite holding different specialties. For instance, in *Olsen*, a podiatrist and an orthopedic surgeon were both allowed to testify about treatment of the foot because both treated the foot in their practice. *Id.* at * 4. Per Dr. Guthman, under the Joint Commission's accreditation, varicoceles, and the decision on whether or not to operate on one, fall under the urologic sub-specialty and not general surgery. (*Id.*)  For example, Dr. Guthman confirmed that his Joint Commission-

3

accredited hospital, would "100%" deny a general surgeon, like Dr. Mayer, any privileges to operate on a varicocele. (SOF at ¶ 73).

By proxy of being a general surgeon, Dr. Mayer may know how to perform varicocele surgery, but the determination to initiate surgery versus conservative care of a varicocele is a decision that falls under the board-specialty of urology. (SOF at ¶ 73). Dr. Mayer does not have a urologist's specialized education, training, knowledge, and experience. If this was a medical malpractice claim that a urologist negligently-performed varicocele surgery, then perhaps Dr. Mayer could testify across specialties. However, this claim does not concern how the surgery is performed, instead, it concerns whether or not surgery was indicated for this patient (something that the only two urologists deposed in this case opined was not indicated). This decision falls squarely to the knowledge of a urologist. Thus, the Court should strike and/or ignore any of Dr. Mayer's urologic opinions.

## IV. ARGUMENT

### A. Jurisdiction and Venue are Proper

The Defendants have consented to the Court's jurisdiction and venue by admission in answer to Plaintiff's Third Amended Complaint. (SOF at ¶ 1).

### B. Summary Judgment is Proper in this Matter

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Though facts must be viewed in the light most favorable to the non-moving party at

the summary judgment stage, this rule only applies if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**C.     Plaintiff Has Not Established the Elements of Deliberate Indifference**

        1.     *Plaintiff must establish all three elements of deliberate indifference to prevail*

The uncontroverted factual record establishes that Plaintiff has unequivocally failed to create any issue of material fact to defeat the Defendants' Motion for Summary Judgment. In order to prevail on a Section 1983 claim, the Plaintiff must show that Dr. Obaisi acted with deliberate indifference to his serious medical need or condition. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). The burden of proof rests on the Plaintiff. *Id.*

The United States Supreme Court has articulated a three-part test for proving deliberate indifference. The Plaintiff must prove: (1) the existence of an objective, serious medical need; (2) that the defendant was subjectively aware of a specific, serious medical need or risk; and (3) that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

In other words, the Plaintiff must establish that Dr. Obaisi actually knew (independently and subjectively) that the Plaintiff needed treatment for a serious medical need or risk but nevertheless <u>purposely and deliberately withheld such treatment</u>. *See Sellers*, 41 F.3d at 1102 (emphasis added). Deliberate indifference "is merely a synonym for intentional or criminally reckless conduct." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even tortious recklessness is not enough. *Id*. Unsuccessful medical treatment, neglect, nor medical malpractice is sufficient to support a claim for deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

2. *The Plaintiff did not suffer from an objectively serious medical condition*

In order to defeat this Motion, Plaintiff must first prove the existence of an objective, serious medical need. *Estelle,* 429 U.S. at 107; *Sellers,* 41 F.3d at 1102; *Vance,* 97 F.3d at 991. A serious medical need is an objective, life-threatening situation, or a risk of needless pain or lingering disability that went untreated, which would have been so obvious that even a lay person would perceive the need for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005); *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991).

As the Seventh Circuit has held, not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim." *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997); *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996) (explaining that "minor aches and pains" do not rise to the level of a serious medical condition). Because not every ache and pain invokes a constitutional concern, Seventh Circuit case law has found it beneficial to look for other objective indicia in order to decide whether an inmate's subjective report of pain rises to the level of an objectively serious medical condition. *See Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999) (complaints of pain were accompanied by internal bleeding, violent cramps, and periods of unconsciousness.

Here, as to the lipoma, medical imaging confirmed that the lipoma's position in the fat layer of the Plaintiff's skin, as opposed to muscle-layer or fascia, should not cause pain. (SOF at ¶ 76). In fact, quite the opposite, as surgically removing the lipoma, and the resultant surgical scar, would be far more likely to cause pain than leaving the lipoma in place. (SOF at ¶ 76). Moreover, multiple times, the lipoma was found to be non-tender, meaning that it did not cause pain when touched. *See e.g.,* (SOF at ¶ 54) ("nontender to touch"). As to any of the Plaintiff's unsupported claims that the lipoma was causing headaches, that claim was medically-disproven.

(SOF at ¶ 76).  Likewise, physical examinations and imaging confirmed that this particular lipoma had none of the characteristics that would suggest it was cancerous such as poor encapsulation or infiltration into surrounding tissue.  *See* (SOF at ¶ 75) (CT image results confirming a well-encapsulated lipoma with no signs of infiltration).

The only "pain" that the lipoma may have caused is aesthetic pain - it looked bad because it was a tissue growth (albeit very small) on the Plaintiff's forehead.  However, aesthetic concerns are not a serious medical condition.  Simply, the lipoma has no evidence of pain.  Without this evidence, Plaintiff cannot prove his initial hurdle - that the lipoma was an objectively serious medical condition.

As to the varicocele, at the outset, Dr. Crivellaro, the UIC urologist, termed the Plaintiff's varicocele "clinically nonsignificant."  (SOF at ¶ 52).  Plaintiff faces an uphill battle to show that a condition that an independent treating physician termed "clinically nonsignificant" rises to the level of an "objectively serious medical need."  *See Cooper*, 97 F.3d at 916 (explaining that "minor aches and pains" do not rise to the level of a serious medical condition).

However, even if a "clinically nonsignificant" condition rose to the level of a constitutional concern, it is unclear how it harmed the Plaintiff.  After all, the Plaintiff told Dr. Crivellaro, the UIC urologist, that the varicocele only caused "intermittent pain."  (SOF at ¶ 51).  In fact, on objective physical examination, UIC Urologist Dr. Crivellaro found that when he palpated (touched) the varicocele, the Plaintiff reported no pain at all.  (SOF at ¶ 51).  Moreover, board-certified urologist Dr. Guthman noted that the Plaintiff kept self-reporting that the varicocele pain was "sharp" or "stabbing," but Dr. Guthman explained that in his thirty-one (31) years of practice and seeing between 9,300 and 15,500 patients over those thirty-one (31) years for varicocele, he has never seen or heard even one patient describe their varicocele-related

7

discomfort as a "sharp pain," and such a report is simply not consistent with how varicocele pain presents in a patient. *See* (SOF at ¶ 72); *see also Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction.")

Either the Plaintiff was not truthful in reporting his varicocele pain or his pain was related to something other than varicocele. Finally, even if the varicocele was causing some discomfort, the condition will not limit a patient's movement, so he can still perform all activities of daily living. (SOF at ¶ 34).

Simply, the Plaintiff cannot prove that his varicocele rose to the level of an objectively serious medical condition. Because he cannot prove that he had an objectively serious medical need, his claim for deliberate indifference fails at the outset.

3. *Dr. Obaisi lacked subjective notice of an excessive risk to the Plaintiff's health*

Dr. Obaisi lacked subjective notice of an excessive risk to the Plaintiff's health. The second element of a deliberate indifference claim – subjective notice – requires that "[a] plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016). For the Plaintiff's claim to succeed, he must establish that Dr. Obaisi knew that the treatment being offered to the Plaintiff was ineffective; and yet, continued pursuing that course of treatment. *See Petties*, 836 F.3d at 728.

Here, Dr. Obaisi was a board-certified general surgeon. (SOF at ¶ 3). He treated lipomas in his past. (SOF at ¶ 3). He knew exactly what he was looking for in deciding when to elevate a lipoma for surgical consultation, and Dr. Obaisi confirmed his diagnosis through a CT imaging study. (SOF at ¶ 62). Interestingly, board-certified general surgeon Dr. Dennis testified that if this was his patient, he would not have even ordered the CT scan, so Dr. Obaisi was being extra-

8

cautious in ordering medical imaging to confirm Dr. Obaisi's objective physical findings regarding the lipoma. (SOF at ¶¶ 74-75).

As to the varicocele, Dr. Obaisi, again, ordered medical imaging, this time an ultrasound study, to confirm his objective physical findings. (SOF at ¶ 43). He then sent the Plaintiff out to a UIC urologist who opined that the Plaintiff's varicocele was a "clinically non-significant" finding and that no additional treatment was required. (SOF at ¶ 52). The record is devoid of any evidence that, at any time, Dr. Obaisi actually knew of and then disregarded a substantial risk of harm to the Plaintiff for either his lipoma or varicocele.

4. *Dr. Obaisi did not display the required culpability because his actions in treating the Plaintiff complied with the applicable standard of care*

The Plaintiff's deliberate indifference claim against Dr. Obaisi also fails because the undisputed facts show that Dr. Obaisi complied with all applicable community standards of medical care in treating the Plaintiff. The third element of a deliberate indifference claim is that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle,* 429 U.S. at 107. In order to infer the required culpability for the serious claim of deliberate indifference based on a medical professional's care, the medical professional's decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

A medical professional is "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under these circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). Mere disagreement with a doctor's medical judgment does not amount to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Questions of whether certain forms of treatment are warranted are a "classic example of a matter for medical judgment". *Estate of Cole ex rel. Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996). The

9

Eighth Amendment does not entitle an inmate to demand specific care or the best care possible. *Forbes*, 112 F. 3d at 267.

With respect to the culpable state of mind requirement, gross negligence is not enough; the conduct must be reckless in the criminal sense. *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008). As the Seventh Circuit recently noted in an *en banc* decision, "Even objective recklessness - failing to act in the face of an unjustifiably high risk that is so obvious that it should be known - is insufficient to make out a claim." *Petties,* 836 F.3d at 728.

Initially, this case represents a classic dispute about medical judgment. The Plaintiff, very clearly, believes that he needs surgery for both his varicocele and his lipoma. However, there can be no dispute that the Plaintiff has received *some* (indeed, significant) treatment for both conditions (medical imaging, medications, medical equipment, and consultations), Plaintiff just believes that it is the wrong treatment, and he needs surgery for both conditions. However, a prisoner's disagreement with the doctor's medical judgment does not amount to deliberate indifference. *Berry,* 604 F.3d at 441; *Forbes*, 112 F.3d at 267.

Second, the Plaintiff can only prevail on his culpability showing if he can demonstrate to the Court that no other "minimally competent medical professional would have responded under these circumstances." *Sain*, 512 F.3d at 894-95. Worded another way, under the case law, if Dr. Obaisi can show that one physician would have responded as he did, then the Plaintiff cannot meet his high threshold of proving medical deliberate indifference. As to the varicocele, Urologist Dr. Crivellaro (an independent physician at UIC) and Urologist Dr. Guthman both confirmed that surgery was not indicated and that conservative treatment measures put in place by Dr. Obaisi (pain medication and scrotal support) were the appropriate response to the Plaintiff's varicocele-related complaints. (SOF at ¶¶ 51-52, 68). As to the lipoma, Dr. Dennis, a

10

general surgeon who has performed over 500 lipoma surgeries, supported Dr. Obaisi's care, confirmed that surgery was not appropriate, and testified that if this was his patient, he would have actually ordered even less treatment than Dr. Obaisi did for this particular patient's lipoma. (SOF at ¶ 74; 77).

Third, acting as the Plaintiff's primary care physician, Dr. Obaisi reasonably relied on the recommendation of Dr. Crivellaro at UIC that no further response was needed to the varicocele. Thus, in order for Plaintiff to prevail and show culpability against Dr. Obaisi, Plaintiff would need to show that relying on Dr. Crivellaro's recommendation was blatantly inappropriate, such that no reasonable doctor could have reviewed Dr. Crivellaro's recommendation and agreed with it. Unfortunately for the Plaintiff, given that Dr. Guthman agreed with Dr. Crivellaro that conservative treatment of the varicocele was the standard, it is unclear how Plaintiff can ever make such a showing.

Finally, the fact that the conservative treatment recommended by the medical specialists has still not resolved the Plaintiff's questionable pain complaints, does not demonstrate culpability on Dr. Obaisi's part. So long as Dr. Obaisi responded reasonably to the risk, he is not culpable, even if the treatment was not ultimately successful. *See Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir. 2010) (finding that a prison official is "free from liability if he responded reasonably to the risk even if the harm ultimately was not averted."); *see also High v. Oberhelman,* No. 97 C 0184, 2000 U.S. Dist. LEXIS 7117, * 28, 2000 WL 705994 (N.D. Ill. May 19, 2000) ("Although Plaintiff is dissatisfied with the caliber and efficacy of his care, Defendant's failure to improve Plaintiff's recurring symptoms, despite his best efforts, did not violate the Constitution"). Thus, the fact that the Plaintiff may still be complaining of pain does not establish culpability against Dr. Obaisi. Rather, the question is did Dr. Obaisi respond

reasonably to the risk. The answer is, of course, yes, he did. After all, board-certified specialists in urology and general surgery 100% support and approve of Dr. Obaisi's treatment decisions.

Ultimately, the Plaintiff is dissatisfied with Dr. Obaisi's treatment of both his varicocele and lipoma. The Plaintiff has an expectation of surgery. Multiple doctors have testified and opined that surgery is not indicated for either condition. Sometimes pain persists but the persistence of pain does not mean that wrongdoing occurred. Here, Dr. Obaisi responded appropriately, and, in the opinion of one general surgeon, actually gave the Plaintiff more care than he would have given the Plaintiff for the same complaints in the free world. Rather than establishing culpability, the undisputed record establishes compassion. The Plaintiff's deliberate indifference claim against Dr. Obaisi fails, as a matter of law.

**D.      The Plaintiff has Failed to Prove his Claim Against Wexford Health Sources, Inc.**

The Plaintiff has failed to prove his claim against Wexford Health Sources, Inc. First, Plaintiff makes the frequent *Monell* allegation that Wexford maintains a policy or widespread practice to deny medical treatment to keep costs down. Despite litigating this case for years, and securing depositions all over the country, not only does the Plaintiff lack any evidence remotely supporting this claim, but time and time again, has secured evidence directly refuting his baseless and illogical claim that Wexford denies necessary medical treatment in order to save money. Second, even if Plaintiff met all elements of a *Monell* claim, his *Monell* claim would still fail against Wexford because he cannot prove underlying deliberate indifference against Dr. Obaisi.

1.      *Plaintiff has not identified an unconstitutional policy or widespread practice of Wexford that caused him harm*

The Plaintiff has still failed to identify any unconstitutional policy or widespread practice by Wexford that caused him harm. Private corporations acting under color of state law, like municipalities, may be held liable for injuries resulting from unconstitutional policies or

practices. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). In order to recover against a corporate defendant under § 1983, a plaintiff must make two showings. First, the Plaintiff must show that an unconstitutional policy or widespread practice exists, and second, the Plaintiff must show that deliberate indifference occurred because of that unconstitutional policy or widespread practice. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986).

<u>First, the Plaintiff has not produced or cited to a single Wexford policy from which he can claim that Wexford maintains an unconstitutional policy</u>. Absent clear evidence of an unconstitutional policy, the Court should not take the Plaintiff's word and assume that one exists. In *Montague v. Wexford Health Sources, Inc.*, the Seventh Circuit affirmed the District Court's grant of summary judgment to Wexford when an inmate claimed that Wexford maintained an unconstitutional policy or widespread practice, but could produce no evidence of either. 615 F. App'x. 378, 379 (7th Cir. 2015). The Seventh Circuit noted that a policy to deny necessary medical treatment in order to save costs made no sense because Wexford would end up spending more money in the long-term either through expensive medical treatment or litigation. *Id.*

Here, the Plaintiff has no evidence of an unconstitutional policy that Wexford denies or delays necessary medical treatment to save costs. In fact, quite the opposite, as numerous witnesses testified that Wexford does not consider cost in their medical treatment decisions. *See* (SOF at ¶ 27) (Dr. Ritz confirming that Wexford's collegial review discussions do not consider cost, and Dr. Obaisi confirming that he does not consider cost in any of his treatment decisions or recommendations). Thus, not only does Plaintiff lack any evidence of a policy to cut costs, the evidence says directly the opposite, Wexford does not consider costs.

Finally, as Dr. Dennis noted, if this was his patient, he would not have ordered a CT scan to further examine the lipoma, as he thinks that CT imaging is superfluous to what he can learn through a physical examination. (SOF at ¶ 74). Thus, rather than showing evidence of "cost cutting," the medical evidence in this case actually shows that Wexford ordered, in one surgeon's opinion, more treatment than was actually necessary.

Second, the Plaintiff has produced no evidence of how other inmates were treated in order to support a "widespread practice" showing. In order to claim a "widespread practice", a prisoner needs evidence of how other inmates were treated in order to show that his treatment was not a "random event" but truly the result of a corporate policy. *Grieveson v. Anderson,* 538 F.3d 763, 774 (7th Cir. 2008). Conclusory, factually unsupported allegations about the experience of other inmates are not a sufficient basis to prove *Monell* liability against Wexford. *Haywood v. Wexford Health Sources, Inc.,* No. 16-cv-3566, 2017 U.S. Dist. LEXIS 28416, * 11 (N.D. Ill. Mar. 1, 2017). Here, the Plaintiff has no evidence of how other inmates were treated. Thus, he cannot proceed on a "widespread practice" theory.

Finally, it bears noting that even if the Plaintiff had met his threshold burden of proof in establishing an unconstitutional policy or widespread practice of Wexford, he still fails the second hurdle of his *Monell* claim - that deliberate indifference actually occurred because of that policy or widespread practice. *Pembaur*, 475 U.S. at 479-80. In order to meet the second prong of a *Monell* claim, the Plaintiff must show that the unconstitutional policy was the "direct cause" or "moving force" behind the alleged deliberate indifference to his serious medical needs. *See Minix v. Canarecci,* 597 F.3d 824, 832 (7th Cir. 2010).

Here, Dr. Obaisi testified that he does not treat any of his patients, including, this Plaintiff, according to any Wexford written policy; rather, he provides medical treatment that is

14

needed, based on his own independent medical judgment. (SOF at ¶ 16). Thus, even if Plaintiff could direct this Court to a Wexford policy or widespread practice to criticize, it could not have been the moving force behind any of Dr. Obaisi's treatment of the Plaintiff's chronic back pain.

Ultimately, Plaintiff cannot meet his first hurdle in proving a *Monell* claim - that an unconstitutional policy or widespread practice exists. Therefore, this Court should grant summary judgment in Wexford's favor.

> 2. Finally, even if the Plaintiff pled a *Monell* claim, his claim still fails because he cannot prove underlying deliberate indifference against Dr. Obaisi

Finally, even if the Plaintiff actually pled a *Monell* claim - which he did not - Plaintiff's claim against Wexford would still fail because he cannot establish underlying deliberate indifference against the individual defendant, Dr. Obaisi, for the reasons stated above. *See Pyles v. Fahim,* 771 F.3d 403, 412 (7th Cir. 2014) (holding that Wexford was not liable for damages because there was no underlying constitutional violation); *Smith v. Wexford Health Sources, Inc.*, No. 15-C-3730, 2017 U.S. Dist. LEXIS 187760, * 21, 2017 WL 5464367 (N.D. Ill. Nov. 14, 2017) (noting that one additional basis for denying a *Monell* claim against Wexford would have been the "lack of deliberate indifference by the individual defendants").

### E. The Plaintiff's claim for punitive damages fails

Finally, the Plaintiff claims punitive damages; however, he has not proven any set of facts that would allow him to recover punitive damages. Punitive damages may be awarded under 42 U.S.C. § 1983 only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Schaub v. VonWald*, 638 F.3d 905, 922-23 (8th Cir. 2011). Here, Dr. Obaisi testified that he never intended to cause the Plaintiff any harm, and that he only desired the best possible medical outcome for the Plaintiff. (SOF at ¶ 80).

15

Therefore, even if this Court finds that there is a question of fact as to the Plaintiff's deliberate indifference claim, it should still find that the Plaintiff will be unable to recover punitive damages, and grant Summary Judgment on this issue.

## **CONCLUSION**

WHEREFORE, Defendants, GHALIA OBAISI as the Independent Executor of the Estate of Saleh Obaisi, M.D. and WEXFORD HEALTH SOURCES, INC., pray that this Honorable Court enter an Order granting Summary Judgment in their favor, dismissing the case with prejudice against Plaintiff, awarding fees and costs, and for any other relief deemed just.

Respectfully submitted,

WEXFORD HEALTH SOURCES, INC. and
GHALIA OBAISI as the Independent Executor of
the Estate of SALEH OBAISI, M.D. (deceased)

By: /s/ James F. Maruna
Matthew H. Weller / ARDC No. 6278685
James F. Maruna / ARDC No. 6313433
CASSIDAY SCHADE, LLP
20 N. Wacker Drive, Suite 1000
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 - Fax
mweller@cassiday.com
jmaruna@cassiday.com

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 28, 2018, I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ James F. Maruna

9025900 JMARUNA;JMARUNA